IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| PROFESSIONAL MAINTENANCE SYSTEMS, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: 1:22-cv-00207-SAG |
| BALTIMORE COUNTY, MARYLAND, *et al*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Professional Maintenance Systems, Inc. ("PMSI") sued Baltimore County, Maryland ("the County") and Preload LLC ("Preload") for damages arising out of a dispute relating to government procurement for a large-scale water reservoir project. Each defendant has filed a Motion to Dismiss the Complaint ("Motion"). *See* ECF 10 (the County), ECF 11 (Preload). The issues have been fully briefed, ECF 17, 19, 24, 25, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Defendants' Motions will be granted and the Complaint will be dismissed without prejudice, except that Count VIII will be dismissed with prejudice.

I.   BACKGROUND

The following facts are derived from the Complaint, ECF 1, and are taken as true for purposes of evaluating Defendants' Motions. The Fullerton Reservoirs were completed in 2020 and hold more than 63 million gallons of drinking water to supply hundreds of thousands of residents of the County and Baltimore City. *Id.* ¶ 2. The County used a competitive bidding process to retain contractors to design and construct the reservoir system (the "Project"), including a goal that 20% of the work on the Project be performed by minority business enterprises

("MBEs") or women business enterprises ("WBEs"). *Id.* ¶ 3. Preload, as a prospective prime contractor intending to bid on the Project, asked PMSI, a certified MBE/WBE contractor, to submit a subcontractor proposal to apply damp proofing and waterproofing to certain Project structures. *Id.* ¶ 4.

PMSI provided a proposal to Preload ("PMSI's Subcontract Proposal") listing prices of $3.15 per square foot for damp proofing the tanks, $4.05 per square foot for damp proofing the vaults, and $3.50 per square foot for waterproofing. *Id.* ¶ 5. Preload and PMSI then executed the County's Form C, which is attached to PMSI's Complaint as an Exhibit. ECF 1-2. The County requires any prime contractor bidding on a contract to include an executed Form C with its bid. ECF 1 ¶ 6. Form C reads, in relevant part:

> The undersigned MBE/WBE subcontractor and prime contractor will enter into a contract for the work/service indicated above upon the prime contractor's execution of a contract for the above referenced project with the Baltimore County. The undersigned subcontractor is a MDOT or Baltimore City certified MBE/WBE. The terms and conditions stated above are consistent with our agreements.

ECF 1-2. Form C lists the work to be done as "coatings, dampproofing, waterproofing." *Id.* For "Subcontract Amount," Form C has $741,150.00 listed, but then it is crossed out and replaced by $1,084,150.00. *Id.* That interlineated change is marked with the initials "SJD" and the date "8/26/16." *Id.* Form C itself was signed by a representative of PMSI on August 23, 2016 and by Steven J. Dudle on behalf of Preload on August 25, 2016. *Id.*

PMSI alleges in its Complaint, "Prior to Preload submitting the executed Form C with its prime bid for the Project, and without PMSI's knowledge or consent, Preload listed a significantly lower price on the Form C. Preload then submitted that Form C containing the entirely fabricated

2

subcontract price with its bid for the Project (the "Bid")."[1] ECF 1 ¶ 7. Specifically, PMSI further alleges that "Steven J. Dudle, District Sales Manager for Preload, falsely inserted a completely arbitrary subcontract price of $1,084,150, a difference of more than $170,000, without the consent or knowledge of PMSI." *Id.* ¶ 40.

One year later, on or about August 25, 2017, a representative of the County's MBE/WBE Program informed PMSI that the County had awarded the Contract to Preload, with PMSI named as MBE subcontractor for damp proofing and waterproofing the tanks. *Id.* ¶ 43. The County representative also stated that the amount of PMSI's subcontract was $1.2 million, which accorded with PMSI's expectation based upon the rates in its PMSI Subcontract Proposal. *Id.* Preload, however, did not notify PMSI that its Bid had been accepted. *Id.* ¶ 8. When PMSI asked Preload for an update on the status of its subcontract, Preload offered its own draft subcontract paying PMSI "much less than the price set forth in the Subcontract Proposal and much less than the fabricated price stated in the Form C." ("Preload Subcontract Proposal 1") *Id.* ¶ 9. Preload Subcontract Proposal 1 in fact offered $741,150.00 (the amount that had been crossed out on Form C). ECF 1-3. PMSI calculates that amount to equal a flat rate of $2.10 per square foot for all damp proofing and waterproofing. ECF 1 ¶ 9. Preload later revised its offer in Preload Subcontract Proposal 2, ECF 1-4, to offer $924,570.00. PMSI calculates Preload Subcontract Proposal 2 to

---

[1] This Court cannot discern, from the Complaint's allegations, what amount was listed on Form C when PMSI's representative executed the form on August 23, 2016. From Form C itself, it would appear that the likely options are (1) that the amount line was blank or (2) that the amount was $741,150.00. The interlineated change to $1,084,150.00 appears to have been made 3 days after PMSI's representative signed the form, corroborating PMSI's assertion that the change happened without its knowledge. Of course, though, the interlineation represents an improvement (from PMSI's perspective) from $741,150.00. There is no indicia on the form, and PMSI does not allege, that a higher figure ever appeared on Form C.

equal a flat rate of $2.62 per square foot.  ECF 1 ¶ 9.  PMSI rejected both proposals because they were below the prices per square foot it had originally proposed.  *Id.* ¶ 10.

In or around August of 2018, the Preload representative engaging in the Project negotiations told the PMSI representative that Preload "was screwing PMSI out of a contract, [] because Preload found a way to perform the Minority Scope of Work for cheaper."  *Id.* ¶ 59.  In or around October 1, 2018, Preload ceased all negotiations with PMSI, claiming that PMSI had not submitted a counter proposal to its most recent offer.  *Id.* ¶ 60.  Preload also notified PMSI at that time that it had submitted a revised MBE plan to the County offering another MBE subcontractor to do the damp proofing and waterproofing tasks.  *Id.*  Preload and PMSI thus never entered into a written subcontract for the Project work.  *Id.* ¶ 10.

In connection with its submission of the revised MBE plan, Preload falsely alleged to the County that PMSI had sustained performance issues in connection with work it was performing pursuant to another sub-subcontract for the Project, in which PMSI dampproofed certain vault structures at the Fullerton Reservoirs for a subcontractor named Allan Myers.  *Id.* ¶¶ 11, 63.  On or about January 29, 2019, the County informed PMSI that on January 15, 2019, it had approved Preload's "modified MBE Plan that utilizes an alternate MBE Subcontractor" and stated that its basis for the decision was "in order for Baltimore County to reach expected deadlines for project completion" and in light of the dispute between PMSI and Preload over the subcontract price.  *Id.* ¶ 67.  Although the Complaint does not allege that the County cited PMSI's poor performance as a reason for approving Preload's substitute contractor, after making its approval decision, the County asked Allan Myers about the quality of PMSI's work.  *Id.* ¶ 64.  On February 15, 2019, Allan Myers informed the County that PMSI's performance had been satisfactory.  *Id.* ¶ 65.  By

4

then, however, the County had already approved Preload's plan to replace its MBE subcontractor. *Id.* ¶ 66.

PMSI alleges that permitting Preload to replace its MBE subcontractor for the project violated the County's own established policies and procedures, which require the general contractor to use the subcontractor originally identified on Form C. *Id.* ¶¶ 12, 29, 30. It further alleges that it lost more than $900,000 in profits it would have earned from the Project. *Id.* ¶ 13.

On March 12, 2019, PMSI and the Maryland Washington Minority Contractors Association, Inc. met with the County Executive and other officials to discuss the project and to appeal the County's January, 2019 decision. *Id.* ¶ 70. A County representative, Mr. Dorsey, "admitted that Preload had defamed PMSI by making deceptive and false allegations about PMSI's work history and performance and that the County had based its decision to approve Preload's modified MBE Plan and terminate PMSI as an MBE subcontractor on this false information" and "admitted that Preload had fraudulently violated the its MBE/WBE Guidelines by submitting a Bid with a subcontract price for PMSI that was significantly less than the price PMSI had proposed and that PMSI and Preload had previously agreed upon." *Id.* ¶ 72. Mr. Dorsey stated that while under normal circumstances Preload would be removed from the Contract for its conduct, the County decided not to take such action due to the status of the Project. *Id.* ¶ 74. Instead, Mr. Dorsey stated that the County was considering fining Preload for its violations or issuing a "stop work" order. *Id.* In a subsequent letter to PMSI in May, 2019, the County Attorney reiterated that the County was considering sanctioning Preload and was reviewing its practices and procedures to prevent a similar situation from reoccurring. *Id.* ¶ 75. But the County attorney opined that the County had no mechanism to force Preload to enter into a subcontract with PMSI. *Id.* This lawsuit ensued in January, 2022.

## II.    STANDARD OF REVIEW

Defendants contend that dismissal is warranted pursuant to Federal Rule of Civil Procedure 12(b)(6), which allows a defendant to test the legal sufficiency of a complaint. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

PMSI has attached several exhibits to its Complaint, including "Form C," and the two proposed subcontracts sent to it by Preload. *See* ECF 1-2; ECF 1-3; ECF 1-4. At the motion to dismiss stage, courts generally do not consider extrinsic evidence. It is well-recognized, however, "that the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is 'integral to the complaint and there is no dispute about the document's authenticity.'" *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021) (quoting *Goines*, 822 F.3d at 166). A document is "integral" where its "very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal quotation

marks omitted) (emphasis removed). Applying those standards, these documents are integral to the Complaint because their existence forms the basis of PMSI's claim. No party has challenged their authenticity, and this Court accordingly deems it appropriate to consider them in adjudicating Defendants' Motions, without converting the Motions into ones seeking summary judgment.

### III.  DISCUSSION

#### A.  The County's Motion

PMSI's claims against the County can be divided into three groups: (1) federal and state equal protection claims (Counts I and III); (2) federal and state substantive due process claims (Counts II and IV); and (3) a civil conspiracy claim against both Defendants. Each group is addressed below.

##### i.  Equal Protection

Although it is not particularly clear, it appears that PMSI is alleging intentional invidious discrimination by the County against PMSI because of its race-based classification as an MBE. That theory makes little logical sense. PMSI asserts that "the County treated it differently from other similarly situated MBE subcontractors based on that very status as a historically racially and economically disadvantaged business[.]" ECF 17 at 22. But the crux of PMSI's argument is that other MBE subcontractors, who were by definition also historically racially and economically disadvantaged businesses, received the benefits of the program where it did not. Thus, PMSI's theory is internally inconsistent, and its MBE status cannot have been the factor motivating the County to treat it disparately.

With purposeful discrimination eliminated, the remaining equal protection theory is a "class-of-one" equal protection claim. PMSI asserts that it "has been intentionally treated differently than others similarly situated and that there is no rational basis for the difference in

treatment." ECF 17 at 24 (quoting *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263 (4th Cir. 2005) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000))). Specifically, PMSI alleges that the County singled it out and treated it differently than other MBE subcontractors by failing to hold Preload to the terms of its Form C. Under a rational basis standard, however, PMSI's claim clearly fails. PMSI itself alleged multiple facts that would provide ample rational bases for the County's actions, namely Preload's allegations (even if untrue) that PMSI's work was dissatisfactory and the fact that replacement of the MBE contractor would allow the Project to remain on schedule, given the inability of Preload and PMSI to reach agreement on a subcontract amount.[2]

PMSI alleges that because "the right to make and enforce contracts" is a fundamental right, the County's actions should be subject to strict scrutiny instead of rational basis review. ECF 17 at 25. However, PMSI has not alleged any government infringement of its right to make and enforce contracts with Preload, but simply alleges that the parties were unable to reach agreement on contract terms more than two years after the bid had been submitted and after months of negotiation. After no agreement was reached, the County authorized Preload to attempt to reach an agreement with a substitute third party. PMSI remained free to make and enforce contracts at will, including with the County. PMSI cites no case law actually applying strict scrutiny to a contract case of this nature and has not therefore alleged "direct and substantial interference" with

---

[2] Courts may assess the conceivable rational bases for government action at the motion to dismiss stage in light of the Plaintiff's burden to plead facts that, if true, demonstrate the lack of any conceivable rational basis for the action. *See Beahn v. Gayles*, 550 F. Supp. 3d 259, 276 n.12 (D. Md. 2021) ("Courts can evaluate the rationality of a statute on a motion to dismiss.") (citing *HSH, Inc. v. City of El Cajon*, 44 F. Supp. 3d 996, 1008 (S.D. Cal. 2014) ("The rational basis test may be applied on a motion to dismiss.")); *Urbanewitz v. Cecil Coll.*, No. RDB-21-2175, 2022 WL 605384, at *4 n.6 (D. Md. Mar. 1, 2022) ("Under rational basis review, it is Plaintiff's burden to plead facts that demonstrate no conceivable government purpose could have provided a rational basis for the College's policy.").

any fundamental right. *Waters v. Gaston Cty.*, 57 F.3d 422, 426 (4th Cir. 1995). And under the applicable rational basis review, as described above, PMSI has not stated a claim.

### ii. Substantive Due Process

The Due Process Clause protects citizens from government action depriving them of property without due process of law. *See Davis v. Fowler*, 504 F. Supp. 502, 505 (D. Md. 1980). The elements of a substantive due process claim are "(1) that [PMSI] had property or a property interest; (2) that the [County] deprived it of this property or property interest; and (3) that the [County's] action falls so far beyond the outer limits of legitimate government action that no process could cure the deficiency." *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 827 (4th Cir. 1995).

PMSI's Complaint fails to plead facts establishing even the first element. PMSI's "property interest" claim is premised on its contention that Form C established Preload's contractual obligation to enter into a subcontract with PMSI "consistent with . . . [PMSI's] Subcontract Proposal." ECF 1 ¶ 6. The problem is that Form C says nothing of the sort. It makes no reference to PMSI's Subcontract Proposal. Instead, Form C dictates that the parties would enter into a subcontract <u>consistent with the terms set forth on Form C</u>, which PMSI unambiguously and repeatedly insists it did not agree to do. And, as noted above, Form C appears to indicate that Preload altered it by interlineation after it had been signed by PMSI's representative.

It is an axiomatic principle of contract law that in the absence of mutual assent, no contract exists. *Giddings v. Northwestern Mut. Life Ins Co.*, 102 U.S. 108, 111 (1880) (noting that "the mutual assent of the minds of the parties . . . is vital in all cases to the creation of a contract obligation."). "[M]utual assent requires '(1) intent to be bound, and (2) definiteness of terms.'" *Kantsevoy v. LumenR LLC*, Civ. No. ELH-17-359, 2019 WL 1441982, at *17 (D. Md. Apr. 1,

9

2019) (quoting *Cochran v. Norkunas*, 398 Md. 1, 14 (2007)).  PMSI alleges in its Complaint that "by executing the Form C, Preload accepted PMSI's Subcontract Proposal," but this Court need not accept factual allegations as true when they are blatantly contradicted by the evidence. *Jeffrey M. Brown Associates, Inc. v. Rockville Center Inc.*, 7 Fed. App'x. 197, 2001 WL 320896 (4th Cir. Apr. 3, 2001) ("[W]e need not accept as true 'the legal conclusions drawn from the facts .... [or] unwarranted inferences, unreasonable conclusions, or arguments,' such as conclusory allegations in the complaint that are contradicted by the attachments.") (quoting *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000)) (internal citation omitted); *see Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir.1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c) ... the exhibit prevails.").  Form C contains no evidence that Preload and PMSI reached a meeting of the minds on any price, including either of those listed on Form C, before or after the interlineation.  And it certainly contains no evidence that Preload acquiesced to the entirely different amounts stated in PMSI's Proposed Subcontract.

Further, Form C appears to be, at best, an agreement to agree, and not an enforceable contract for the work to be performed.  *See Cochran v Norkunas*, 398 Md. 1, 18-21 (2007) (deeming letter of intent unenforceable because "language of the letter of intent does not support the Buyers' contention that the parties had reached a final agreement."); *Horsey v. Horsey*, 329 Md. 392, 420-21 (1993) (declining to enforce an agreement to negotiate a future agreement); *Advance Telecom Process LLC v. DSFederal, Inc.*, 224 Md. App. 164, 176-78 (2015) (holding contractors' teaming agreement to be an unenforceable agreement to agree).  The Complaint, as pled, has not established the elements of an enforceable contract memorialized by Form C or otherwise.

Even if there were some protected property interest, PMSI has not pled "arbitrary" or "conscience shocking" conduct by the County that violated its substantive due process rights. *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). Under the facts PMSI pled, the County agreed to Preload's replacement of its MBE subcontractor after having been informed (1) that Preload and PMSI had been unable to reach a subcontract, and (2) that PMSI's performance waterproofing other tanks associated with the Project had been dissatisfactory. *See* ECF 1 ¶ 67 (noting that the County made its decision to approve replacement "in order . . . to reach expected deadlines for project completion" and "on the dispute concerning the amount of PMSI's subcontract price"). The fact that County officials later suggested that Preload might be sanctioned for its allegedly duplicitous conduct does not suggest that the County's original decision to permit substitution was arbitrary or implicated substantive due process protections, even if PMSI had a protectible property interest.

### iii. Civil Conspiracy

The elements of civil conspiracy are (1) an agreement or understanding between Preload and the County, (2) an unlawful or tortious act in furtherance of that agreement, and (3) actual damages to PMSI. *See Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154 (2007). PMSI has not alleged any facts suggesting an express agreement or understanding between Preload and the County to harm PMSI, but only a conclusory allegation that "Preload and the County clearly had a meeting of the minds to wrongfully terminate PMSI as the MBE subcontractor for the County's Fullerton Reservoir Project." ECF 1 at 154. Instead, the facts PMSI cites, when taken as true, establish not a meeting of the minds but unilateral acts taken by Preload to trick the County. And PMSI does not allege that the County was told of Preload's alleged deception until the County's decision to approve Preload's replacement MBE subcontractor was final. *Id.* ¶¶ 65, 66. While it

is possible that the failures are due to inartful pleading, the Complaint does not include any facts to suggest that the County had knowledge, before it approved Preload's revised subcontractor plan, that Preload's complaints about PMSI's performance were erroneous or pretextual. Moreover, as noted above, the Complaint expressly alleges that the County premised its decision to permit replacement, at least in part, on Preload's inability to reach a subcontract with PMSI and its need to progress with the Project's deadlines.

Certainly, as PMSI alleges, in some circumstances "a conspiracy may be established by inference from the nature of the acts complained of, the individual and collective interests of the alleged conspirators, the situation and relation of the parties at the time of the commission of the acts, the motives which produced them and all the surrounding circumstances preceding and attending the culmination of the common design." *Western Maryland Dairy v. Chenowith*, 180 Md. 236, 243-44 (1942). Rarely is a plaintiff blessed with direct evidence of conspiratorial communications. But here, as described above, the alleged facts and situation simply do not allow a plausible inference that a conspiracy existed between Preload and the County to commit a tort or unlawful act. Count XI will therefore be dismissed.

### B. Preload's Motion

The sheer number of causes of action PMSI asserts against Preload corroborate Preload's contention that this case, like others presenting similar facts, is "a case of a grievance in search of an actionable claim." *A-Pinn Contracting LLC v. Miller Pipeline LLC*, No. 1538, 2019 WL 3731895, at *1 (Md. App. Aug. 8, 2019). Taking PMSI's allegations as true, the reasons for its frustration are readily evident: Preload allegedly wronged PMSI during and following the subcontract negotiations and suffered no adverse consequences. But for the reasons described below, none of PMSI's myriad claims is actionable as currently pled.

### i. Statute of Limitations

Preload's initial argument is that PMSI's claims are all time-barred because dates and events alleged by PMSI in its Complaint establish that its claims accrued more than three years before it filed suit in early 2022. Specifically, Preload argues (1) that the bids were publicly opened on August 25, 2016, which meant PMSI could see that Preload had the lowest bid with a Form C indicating a subcontract value of $1,084,150.00; (2) that PMSI knew by August 30, 2017 that Preload was offering it a subcontract at amount lower than PMSI had contemplated; (3) that PMSI knew by August, 2018 that Preload was "screwing PMSI out of a contract[;]" and (4) that PMSI knew by October, 2018 that Preload had terminated subcontract negotiations with PMSI and would submit the name of a replacement subcontractor for the County's approval.

Preload's limitations argument, premised on the facts PMSI alleged in its Complaint, is compelling. First, it is unquestionably persuasive with respect to the claim in Count VIII, for injurious falsehood. Maryland law establishes just a one-year limitations period for injurious falsehood. Md. Code Ann., Cts. & Jud. Proc. § 5-105; *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 651 (D. Md. 2015). PMSI knew of the false allegations made by Preload about its work performance, at the very latest, by its March, 2019 meeting with the County to "appeal" the replacement approval. PMSI makes a creative yet unsubstantiated argument that because the injurious falsehood it alleges is part of the basis for its tortious interference claim, the statute of limitations for injurious falsehood was tolled. While the tortious interference claim has a three-year statute of limitations, PMSI has no support for its tolling argument that would triple the limitations period for its stand-alone injurious falsehood claim, and this Court is aware of none. Count VIII will therefore be dismissed with prejudice as time-barred.

With respect to PMSI's remaining claims which are subject to a three-year limitations period, Preload's motion to dismiss is meritorious as to certain claims, but not others. PMSI argues that its breach of contract and unjust enrichment claims are premised on Preload's failure to enter into a subcontract with PMSI. ECF 19 at 31, 34. PMSI knew, at the latest, by October 2018 that Preload had terminated discussions and would seek approval of another MBE subcontractor. Those claims, as pled, are therefore time-barred. PMSI's fraud-based claims appear to be based on Steven J. Dudle's August 26, 2016 interlineation to Form C. ECF 19 at 25. Form C was available to PMSI as early as August of 2016, and PMSI was well aware of the relevant facts by 2017. Thus, those claims are time-barred as well. The only claims that may not be time-barred as pled are the claims for tortious interference with business relations and civil conspiracy, since those claims rely, at least in part, on the actions by the County in January, 2019. Those claims, however, like the other claims asserted, are independently subject to dismissal for substantive reasons described below.

### ii. Fraud Claims (Counts V and VI)

To state a claim for fraudulent inducement or fraudulent misrepresentation, PMSI must plead the following elements:

> (1) That the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*CapitalSource Fin., LLC v. Delco Oil, Inc.*, 608 F. Supp. 2d 655, 666 (D. Md. 2009) (quoting *Nails v. S&R, Inc.*, 334 Md. 398, 415 (1994)). Fraud claims are subject to a heightened pleading standard in Fed. R. Civ. P. 9(b), which requires that a plaintiff "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the

misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir.2008) (internal quotation marks omitted). In other words, the plaintiff must specifically allege "the who, what, when, where and how of the alleged fraud." *Id.* (internal quotation marks omitted).

PMSI's argument tries to fit a square peg into a round hole. It asserts that the false representation was made on August 26, 2016 by Steven J. Dudle within Form C. ECF 19 at 25. The fundamental problem with PMSI's theory is that Form C was not a representation made *to* PMSI. Form C was submitted by Preload and PMSI to the County. Although PMSI contends that Preload altered its contents, the altered contents were also not disseminated to PMSI. In fact, PMSI alleges that it did not learn about the contents until at least one year after the Contract was awarded. Thus, the sole misrepresentation that the Complaint describes by "time, place and contents" is not a representation made to PMSI at all. It also could not have been made for the purpose of defrauding PMSI, since PMSI was, by its own allegations, unaware of it. PMSI similarly could not have relied on a misrepresentation of which it lacked knowledge.

The Complaint references two other false statements. First, it suggests that Preload made a false representation "that it would include in its Bid the subcontract price that PMSI had proposed in its Subcontract Proposal." ECF 1 ¶ 108. If such a representation was made to PMSI at some point, PMSI has failed to allege the speaker or the time and place and manner of the representation. The second false representation referenced in the Complaint is "that Preload and PMSI would enter into a subcontract upon Preload's execution of the Contract with the County." *Id*. That representation, again, was not alleged to have been made by Preload to PMSI, but was made in Form C by both Preload and PMSI to the County. Moreover, Preload attempted to negotiate a subcontract, at or near the sums set forth in Form C, with PMSI, but PMSI declined. For both

reasons, then, PMSI cannot premise a fraud claim on that representation, and Counts V and VI are subject to dismissal.

### iii. Tortious Interference with Business Relations

A claim for tortious interference with business relations in Maryland has four elements: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 69 (1984) (quoting *Willner v. Silverman,* 109 Md. 341, 355 (1909)).  PMSI's claim fails to plead those elements.

While PMSI alleged that Preload intentionally and willfully made false statements about its job performance, it has not pled facts to suggest that those statements were calculated to affect PMSI's business endeavors, or that any actual damage ensued.  PMSI has not pled any business relationship with the County that was impacted by Preload's alleged actions, other than the instant Fullerton Reservoir Project.  And despite PMSI's insistence in construing the instant situation as a decision made by the County to terminate its subcontract, its own allegations, taken as true, fail to substantiate that claim.  PMSI did not, and was not expected to, have any contractual relationship with the County.  The only anticipated contract was a subcontract with Preload which never came to fruition.  The decision by Preload to terminate the negotiations, in fact, caused PMSI to lose the opportunity to perform the work on the Project.  The County's subsequent decision to allow Preload to continue with the Contract utilizing a different MBE contractor did not change PMSI's business prospects, because Preload had already declined further negotiation of a subcontract with PMSI.

It is evident that PMSI had hoped that the County would insist that Preload be bound to its original MBE proposal, thus forcing Preload to choose between reaching a contractual arrangement with PMSI (at any price) or losing the Project contract. But PMSI has not cited any authority, regulatory or otherwise, that permits the County government to dictate the terms of a contractual agreement between two private entities. Certainly, the County could have decided to terminate its own Contract with Preload because Preload failed to reach agreement with PMSI or because the County credited PMSI's allegations of mistreatment. And if that termination had occurred, PMSI would be in the same position it is today – having received no money and performed no work under a subcontract. But the County's decision to "stick with" Preload and allow its replacement of its MBE subcontractor caused PMSI no additional loss. Thus, no business relationships were interfered with and PMSI has not pled the elements of a tortious interference claim.

### iv. Breach of Contract

PMSI alleges a breach of contract, again contending that Form C establishes a contractual obligation. For the reasons set forth in section III.A.2 above, PMSI's factual allegations contradict that position. PMSI's breach of contract claim, therefore, must be dismissed because no contract was formed.

### v. Unjust Enrichment

Alternative to its contract claim, PMSI seeks relief under a theory of unjust enrichment. Unjust enrichment requires three elements:

1. A benefit conferred upon the defendant by the plaintiff;

2. An appreciation or knowledge by the defendant of the benefit; and

> 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151–152, 757 A.2d 108, 113 (2000) (quoting *County Comm'rs v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95 n.7, 747 A.2d 600, 607 n.7 (2000)).

As pled, PMSI's unjust enrichment claim makes no sense. The benefit it purports to address is "ill-gotten profits [Preload] . . . made in connection with the procurement contract having engaged in the fraudulent misconduct alleged in the Complaint." ECF 19 at 35. But those profits did not result directly from a benefit conferred upon the Defendant by the Plaintiff. The only benefit PMSI arguably conferred upon Preload was permitting it to use its name and Form C in the contract bid. That benefit has no concrete monetary value and it resulted in no measurable loss to PMSI.

Moreover, PMSI does not simply seek to be compensated for allowing use of its name. It seeks to be compensated for significant work it did not perform. Unjust enrichment is an equitable doctrine but the claim the Complaint asserts does not sound in equity. Instead, PMSI suggests that because it was mistreated in the negotiation process, Preload should have to disgorge all of its contractual profits to PMSI. The allegations sound in an attempt at punishment, not equity. For those reasons, as pled, the unjust enrichment claim must be dismissed, even if it were not also time-barred.

### vi. Civil Conspiracy

Finally, for the reasons described in section III.A.3 above, PMSI has not adequately stated a claim for civil conspiracy against Preload. The clear allegations in the Complaint are that Preload made false representations to the County, which the County relied upon in allowing Preload to replace its MBE contractor, before it later learned that Preload's allegations had been false. Those

facts, taken as true, do not establish that Preload and the County had a meeting of the minds or reached an agreement or understanding to engage in an unlawful or tortious act. In fact, they allege quite the opposite. The fact that the County, once learning of Preload's improper conduct, decided not to reverse its decision to approve the replacement does not suggest that the Defendants conspired before that decision was made.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss, ECF 10, 11, are GRANTED and the Complaint will be dismissed without prejudice, except that Count VIII will be dismissed with prejudice. Any motion seeking leave to amend must be filed within twenty-one days, or the dismissal will convert to dismissal with prejudice and the case will be closed. A separate Order follows.


Dated: June 30, 2022                                      /s/
                                         Stephanie A. Gallagher
                                         United States District Judge