IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| PROFESSIONAL MAINTENANCE SYSTEMS, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: 1:22-cv-00207-SAG |
| BALTIMORE COUNTY, MARYLAND, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

The Court is now presented with a second set of Motions to Dismiss regarding this lawsuit filed by Professional Maintenance Systems, Inc. ("PMSI") against Baltimore County, Maryland ("the County") and Preload, LLC ("Preload") for damages arising out of a dispute concerning government procurement for a large-scale water reservoir project. *See* ECF 41 (the County), ECF 40 (Preload). The issues have been fully briefed, ECF 44, 45, 48, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, the County's motion will be granted and Preload's motion will be granted in part and denied in part.

**I.   BACKGROUND**

This Court included a full recitation of the facts alleged in the original Complaint, ECF 1, in its opinion adjudicating the first set of motions to dismiss on June 30, 2022. ECF 26. Because the factual changes in the Amended Complaint are modest, this Court will simply incorporate the Background section of that opinion by reference herein, and will address any relevant changes to the statement of facts in the Analysis section below.

1

## II. STANDARD OF REVIEW

As before, Defendants again contend that dismissal is warranted pursuant to Federal Rule of Civil Procedure 12(b)(6), which allows a defendant to test the legal sufficiency of a complaint. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

PMSI attached several exhibits to its original Complaint, including "Form C," and the two proposed subcontracts sent to it by Preload. *See* ECF 1-2; ECF 1-3; ECF 1-4. At the motion to dismiss stage, courts generally do not consider extrinsic evidence. It is well-recognized, however, "that the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is 'integral to the complaint and there is no dispute about the document's authenticity.'" *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021) (quoting *Goines*, 822 F.3d at 166). A document is "integral" where its "very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Chesapeake Bay Found.,*

2

*Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal quotation marks omitted) (emphasis removed). Applying those standards, these documents are integral to the Amended Complaint because their existence forms the basis of PMSI's claims. No party has challenged their authenticity, and this Court accordingly deems it appropriate to consider them in adjudicating Defendants' motions, without converting the motions into motions for summary judgment.

### III. DISCUSSION

PMSI has narrowed the claims it asserts in the Amended Complaint against both the County and Preload. Nevertheless, as described below, several of the changes made to the remaining counts either do not rectify the deficiencies identified in this Court's earlier opinion or illustrate why the counts cannot survive dismissal. PMSI's tortious interference claim against Preload, taking all of the facts alleged as true, constitutes the sole claim that is adequately pled.

#### A. The County's Motion

PMSI's present claims against the County can be divided into two groups: (1) federal and state equal protection claims (Counts I and II); and (2) a civil conspiracy claim against both Defendants (Count VI). Each group is addressed below.

##### 1. Equal Protection

In its Amended Complaint, PMSI alleges intentional invidious discrimination by the County, suggesting that it received different treatment than "non-racial minority subcontractors" like CSI, the woman-owned business enterprise ("WBE") that replaced its role in Preload's contract. *See, e.g.*, ECF 39 ¶¶ 92, 93, 95. PMSI's revised theory is that white-owned WBEs receive the benefits of the County's MBE/WBE program (requiring the participation of WBEs and minority business enterprises ("MBEs") in government contracts) while black-owned MBEs do

3

not.  It argues that the County permitted Preload to terminate its subcontract with PMSI, but it did not do this with any non-racial minority subcontractor, such as CSI.  *Id.*

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This equal protection requirement "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  Thus, to state an equal protection claim, a plaintiff must allege facts to "first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  If a plaintiff meets that burden, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

Even considering its revised theory in the Amended Complaint, PMSI has not alleged facts suggesting that it was treated differently from others similarly situated.  PMSI disagrees with the County's approval of Preload's modified MBE/WBE plan, which removed PMSI as the MBE/WBE subcontractor and substituted a WBE, CSI.  But PMSI has not cited any instance in which the County refused to approve another contractor's modified MBE/WBE plan under similar circumstances, thus intentionally or even inadvertently protecting a non-racial minority from termination from its subcontract.  The mere fact that other MBE/WBE subcontractors completed their work on various contracts without being terminated does not evidence discrimination by the County.  The differential treatment that must be alleged must suggest that the County handled situations differently in which a general contractor wished to substitute a MBE/WBE subcontractor, depending on that subcontractor's race.  Because the Amended Complaint is devoid

of any such allegations, PMSI has not stated a viable equal protection claim under state or federal law and this Court need not address the appropriate level of scrutiny.[1]

2. **Civil Conspiracy**

As set forth in this Court's earlier opinion, the elements of civil conspiracy are (1) an agreement or understanding between Preload and the County, (2) an unlawful or tortious act in furtherance of that agreement, and (3) actual damages to PMSI. *See Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154 (2007). Initially, the facts PMSI pled in its original complaint suggested that Preload had duped the County, with the County left unaware of the fact that Preload's malicious assertions were unsubstantiated until after the County had approved the substitute agreement. Now, PMSI has revised its allegations to allege that it contested Preload's poor performance allegations to the County before the County approved Preload's replacement MBE/WBE subcontractor. ECF 39 ¶ 135. Even taken as true and construed in the light most favorable to PMSI, though, the present allegations do not allow a plausible inference of an agreement or understanding to wrong PMSI. There is certainly no direct evidence of any such agreement or understanding between Preload and the County. But a conspiracy "may be established by inference from the nature of the acts complained of, the individual and collective interest of the alleged conspirators, the situation and relation of the parties at the time of the commission of the acts, the motives which produced them, and all the surrounding circumstances preceding and

---

[1] The same deficiencies exist for PMSI's "class-of-one" equal protection claim. "[T]he Supreme Court has recognized the validity of 'class of one' Equal Protection claims, 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263 (4th Cir. 2005) (internal citation omitted). However, as this Court previously explained, there is ample rational basis to explain the County's approval of the subcontractor exchange, most notably, the failure of PMSI and Preload to reach an agreement. ECF 26 at 8. PMSI's Amended Complaint provides no allegation to suggest otherwise.

attending the culmination of the common design." *Hoffman v. Stamper,* 385 Md. 1, 25–26 (2005) (quoting *W. Md. Dairy v. Chenowith,* 180 Md. 236, 243–44 (1942)). Here, though, none of those factors support an inference that a conspiracy existed. Although Preload may have had a motive to malign PMSI to replace it on the contract, the County had no interaction with PMSI or motivation to undermine an MBE that its own program intended to support. Instead, the County's sole interest was in completing its project in a timely manner. Construing the facts in the light most favorable to PMSI, one can certainly infer that the County declined to investigate Preload's allegations of poor performance before approving the proposed replacement to allow the work to proceed. But that is a far cry from inferring an intentional agreement to harm PMSI. The motions to dismiss Count VI will therefore be granted, in light of PMSI's failure to plead facts suggesting a plausible agreement or understanding between the two Defendants.

### B. Preload's Motion

PMSI has reduced its causes of action against Preload to four: (1) Fraudulent Inducement (Count III); (2) Fraudulent Misrepresentation (Count IV); (3) Tortious Interference with Business Relations (Count V); and (4) Civil Conspiracy (Count VI). Preload's motion to dismiss the Civil Conspiracy count will be granted for the reasons addressed above. The remaining counts are addressed below.

#### 1. Fraud Claims

PMSI's attempt to re-litigate this Court's ruling as to the applicability of the limitations bar to its fraud claims, without making any meaningful changes to the facts alleged, is unavailing. Even in the Amended Complaint, PMSI's two fraud claims appear to be premised on Steven J. Dudle's August 26, 2016 interlineation to Form C, or prior unspecified misrepresentations that

induced PMSI to sign Form C.[2] ECF 39 ¶¶ 106, 108; ECF 44 at 32 (discussing Form C as the "time, place, manner, or speaker" of the false representation). Form C, with the interlineation, was available to PMSI as early as August of 2016, and PMSI was well-aware of the relevant facts by 2017. The issue is not when PMSI learned with finality that it would not be performing the waterproofing on the project, but when PMSI learned that Dudle had made an alleged misrepresentation about the amount PMSI would be paid. This Court therefore affirms its ruling that PMSI's two fraud claims are time-barred, and its accompanying ruling that Form C did not constitute a representation made by Preload to PMSI for the purpose of committing fraud. *See* ECF 26 at 14–16.

### 2. Tortious Interference with Business Relations

A claim for tortious interference with business relations in Maryland has four elements: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 69 (1984) (quoting *Willner v. Silverman*, 109 Md. 341, 355 (1909)).

In this Court's earlier memorandum opinion, it opined that PMSI's then-articulated tortious interference claim was not time-barred, since it appeared to rely in part on actions taken by the County in 2019. ECF 26 at 14. Nonetheless, this Court concluded that PMSI failed to plead the four elements of a tortious interference claim because, *inter alia*, it had failed to allege any damages. *Id.* at 16.

---

[2] To the extent the fraud claims are premised on something else, PMSI has not identified that communication or those communications with the particularity required by Fed. R. Civ. P. 9(b).

In the Amended Complaint, however, PMSI alters its theory to instead focus on its loss of business opportunities with other prime contractors, specifically Oscar Renda Contracting, Inc. ("ORC"). ECF 39 ¶ 127. The Amended Complaint asserts that at the time Preload fabricated the false allegations about PSMI, PMSI and ORC were negotiating a contract, and ORC "unexpectedly walked away from the deal in or around October 2018." *Id.* ¶ 129. The Amended Complaint alleges that ORC decided to terminate the negotiations as a result of Preload's false allegations to the County about PMSI's work performance, and thus the Amended Complaint plausibly pleads a tortious interference claim.[3]

PMSI does not specify when it learned the reason behind ORC's decision to walk away. *Id.* ¶ 130. Thus, it is not "clear from the face" of the Amended Complaint that PMSI's claim is time-barred, and that issue will have to be fleshed out in discovery. Preload's motion to dismiss PMSI's revised tortious interference claim is therefore denied.

## IV. CONCLUSION

For the reasons set forth above, Defendant Preload's Motion to Dismiss, ECF 40, is DENIED as to Count V and GRANTED as to the remaining counts. Defendant Baltimore County's Motion to Dismiss, ECF 41, is GRANTED. A separate Order follows.

Dated: December 2, 2022

/s/
Stephanie A. Gallagher
United States District Judge

---

[3] The allegations in the Amended Complaint somewhat undermine the notion that Preload's actions were undertaken with the unlawful purpose to cause PMSI damage or loss to its business relationship with ORC. PMSI specifically alleges that Preload's "smear campaign" was "aimed at convincing the County to terminate PMSI as the MBE subcontractor," ECF 39 ¶ 122, and does not suggest that Preload had any knowledge (1) of PMSI's negotiations with ORC or (2) that ORC would learn of Preload's representations to the County. Those facts, also, will be explored in discovery as the case proceeds.

8